IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CV-423-FL


| | | |
|---|---|---|
| HAWORTH, INC., a Michigan corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| SHIRISHA JANUMPALLY, M.D. an individual; SILVIJA VALLERU, D.D.S. an individual; SURESH VENKAT DOKI an individual; LIONSHEAD ENTERPRISES CORPORATION a Delaware corporation; GLOBAL COMPUTER PRODUCTS, INC. a Virginia corporation; FEDERAL SYSTEMS LLC a Virginia limited liability company; GIBRALTAR BUSINESS CAPITAL, LLC a Delaware limited liability company; SHOP TOOLS, INC. a Colorado corporation; WILLIAM INMAN COMPANY, LLC a Florida limited liability company; ATTRACTCAPITAL, LLC a New York limited liability company, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |


This matter is before the court on defendants' motions to dismiss, denominated as follows:

1) Motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure
   12(b)(6) by defendant AttractCapital, LLC ("Attract") (DE 60);

2) Motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure
   12(b)(6) by defendant William Inman Company, LLC ("Inman") (DE 63);

3) Motion to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, failure to state a claim, and failure to join a party, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6), and 12(b)(7) by defendants Shirisha Janumpally, M.D. ("Janumpally"); Silvija Valleru, D.D.S. ("Valleru"); Suresh Venkat Doki ("Doki"); and Lionshead Enterprises Corporation ("Lionshead") (together, the "Controlling Group defendants"); Global Computer Products, Inc. ("Global"), Federal Systems, LLC ("Federal"), Gibraltar Business Capital, LLC ("Gibraltar"), and Shop Tools, Inc. ("Shop Tools") (together, the "Affiliated Entities defendants") (DE 66).

These motions have been briefed fully. In this posture, the issues raised are ripe for ruling. For the following reasons, each motion is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiff commenced this action on August 18, 2017, and filed amended complaint on November 21, 2017, asserting claims arising out of indebtedness owed to plaintiff by non-party Miller's of Columbia, Inc. ("MOC"). Plaintiff asserts claims on its own behalf, as a creditor of MOC, and as assignee of MOC and certain MOC shareholders, against defendants on the basis of their involvement in a leveraged buyout transaction of MOC and other financial transactions that allegedly rendered MOC insolvent for a period of time. Plaintiff asserts the following claims:

1) Fraudulent transfer under N.C. Gen. Stat. § 39-23.5(b), against the Controlling Group defendants and the Affiliated Entities defendants ("Count I");

2) Fraudulent transfer under N.C. Gen. Stat. § 39-23.4(a)(1),[1] against the Controlling Group

---

[1] Although the complaint in the heading for this claim specifies this claim arises under N.C. Gen. Stat. § 39-**23.1**(a)(1), there is no such subsection in the statute. See N.C. Gen. Stat. § 39-23.1. In the text of the claim, and in discussion of the claim in briefing, plaintiff cites instead to § 39-**23.4**(a)(1) (See Compl. ¶ 107; Pl's Mem. (DE 71) at 8, 24-25), which the court considers the correct citation for the claim asserted.

defendants ("Count II");

3)     Fraudulent transfer under N.C. Gen. Stat. § 39-23.4(a)(2), against the Controlling Group defendants and the Affiliated Entities defendants ("Count III");

4)     Fraud/Misrepresentation, against defendants Doki and Lionshead ("Count IV");

5)     Breach of fiduciary duty, against the Controlling Group defendants ("Count V");

6)     Declaratory judgment, against the Controlling Group defendants and the Affiliated Entities defendants ("Count VI");

7)     Unlawful distribution of corporate funds under N.C. Gen. Stat. §§ 55-6-40(c), against the Controlling Group defendants ("Count VII");

8)     Fraudulent transfer under N.C. Gen. Stat. § 39-23.4(a)(2), against defendants Inman and Attract ("Count VIII");

9)     Oppression of minority shareholders, against the Controlling Group defendants ("Count IX").

Plaintiff seeks compensatory damages and declaratory relief, including damages on claims against defendants ranging from $70,000 against defendant Attract to $1,096,045.37 plus finance charges against the Controlling Group defendants.   Plaintiff attaches to the amended complaint six documents titled "Assignment of Claims" executed by MOC and certain current and/or former shareholders of MOC.  The five individuals who executed the assignments are Paul H. Olsen ("Paul Olsen"), David E. Olsen ("David Olsen"), Betty B. Olsen ("Betty Olsen"), Barbara O. Whitman ("Whitman"), and Bettye J. Shepard ("Shepard").  Betty Olsen, Whitman, and Shepard were named as defendants in plaintiff's original complaint filed August 18, 2017, but they are not named as defendants in plaintiff's amended complaint.

In moving to dismiss the sole claim asserted against it, defendant Attract relies in part upon a "Stock Redemption and Purchase Agreement" for the redemption and purchase of stock of MOC, as well as schedules thereto.  (DE 61-1, DE 61-2).  In support of its motion to dismiss, defendant Inman also relies in part upon the Stock Redemption and Purchase Agreement and adopts certain arguments asserted by defendant Attract.

In their motion to dismiss, the Controlling Group defendants and Affiliated Entities defendants raise multiple grounds for dismissal of claims against them, as detailed further in the court's discussion herein.  In support of their motion to dismiss, they rely in part upon a complaint and stipulated dismissal of an action brought by plaintiff in Michigan state court against MOC, David Olsen, Paul Olsen, defendant Janumpally, and defendant Valleru (the "Michigan Litgation").  In response to this motion to dismiss, plaintiff relies in part upon a settlement agreement resolving the Michigan Litigation.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows.[2]  Plaintiff is a Michigan corporation and a "global leader in the design and manufacture of organic workspaces, including seating products, systems furniture, raised floors, movable walls, and storage systems."  (Compl. ¶ 14).  Non-party MOC is a closely held North Carolina corporation, with a principal place of business in South Carolina, that had been an authorized Haworth dealer for decades prior to 2016.  (Id. ¶¶ 2, 15, 16, 44, 47).  Throughout 2015 and 2016, plaintiff sold to MOC products described in invoices sent to MOC.  (Id. ¶ 20).  In early 2016, MOC was indebted to plaintiff in amounts exceeding approximately $1,000,000.00 including finance charges.  (Id. ¶¶ 20-24, 55, 63-64, 80).

---

[2] Hereinafter, all references to the "complaint" in the text and to "Compl." in citations are to the amended complaint filed November 21, 2017, (DE 53), unless otherwise specified.

As of January 2016, MOC was owned by Betty Olsen, Whitman, Shepard (collectively, the "Cashed-Out Sellers"), Paul Olsen and David Olsen. (Id. ¶ 27). In February 2016, the Controlling Group defendants undertook to purchase a controlling interest in MOC through defendants Janumpally and Valleru, pursuant to a leveraged buyout transaction (the "LBO Transaction"). (Id. ¶ 28). Defendant Janumpally is a neurologist, and defendant Valleru is a dentist, who both reside in and practice full-time in Virginia. (Id. ¶¶ 42-43). Defendants Doki and Lionshead, which is a Delaware corporation, are also located in Virginia and were retained by defendants Janumpally and Valleru to manage MOC remotely from Virginia. (Id. ¶¶ 4-5, 47). "As explained below, the LBO Transaction simultaneously drained [MOC] of cash and loaded it with debt." (Id. ¶ 29).

> To effect the LBO Transaction, [MOC], David Olsen, the Cashed-Out Sellers, and [defendants Janumpally and Valleru] entered into a Stock Redemption and Purchase Agreement dated February 19, 2016 (the "Agreement"). Under the Agreement, [MOC] redeemed its shares from the Cashed-Out Sellers and David Olsen in exchange for $1,000,000.00 cash and a promissory note in the amount of $1,650,000.00. Under the Agreement, David Olsen retained some shares in [MOC], but all shares held by the Cashed-Out Sellers were redeemed. . . . Of the $1,000,000.00 in cash paid for the redemption of [MOC] shares, upon information and belief, [MOC] paid $350,000.00 to [defendant] Inman . . . and $70,000.00 to [defendant] Attract[]. Under the Agreement, upon information and belief, [defendants Janumpally and Valleru] collectively paid approximately $586,000.00 to [MOC] in exchange for a 70% controlling interest in [MOC]. [Defendant] Janumpally owned 56% of [MOC] and Valleru owned 14% of [MOC] following the closing of the LBO Transaction.

(Id. ¶¶ 30-37). "After the closing of the LBO Transaction, [defendants Janumpally and Valleru] entirely abdicated their responsibilities as controlling owners and officers and failed to take any management role in [MOC] whatsoever," and they "did not devote their full-time attention to running the company," despite being designated Chief Executive Officer and President, and directors, of MOC. (Id. ¶¶ 39-40). Instead, defendants Doki and Lionshead, on behalf of defendants Janumpally and Valleru, "took over complete management and control" of MOC, remotely from

their location in Virginia.  (Id. ¶¶ 46-48).

"After the closing of the LBO Transaction, the Controlling Group [defendants] took full control over [MOC's] bank accounts and had exclusive check-writing authority for [MOC]."  (Id. ¶ 49). The Controlling Group defendants caused MOC to pay defendant Lionshead a "management fee" of $20,000 per month.  (Id. ¶ 50).  MOC "paid this management fee on several occasions during a period that [MOC] was not paying [plaintiff] or its other vendors."  (Id. ¶ 51).

MOC "began having difficulty paying its vendors, including Haworth, as soon as March 9, 2016 – only days after the March 2, 2016 funding date of the LBO Transaction."  (Id. ¶ 55).  At that time, MOC was "unable to meet its payroll obligations and needed cash in order to meet payroll," a situation caused, in part, by the Controlling Group defendants' decision to change MOC's source of operating capital from a traditional bank line of credit to a factoring facility that reduced available credit and charged higher interest rates.  (Id. ¶¶ 56-63).

"In June 2016, [MOC] had fallen behind on its account with [plaintiff]."  (Id. ¶ 64).  "A major customer of [MOC] had various outstanding orders with [plaintiff]."  (Id. ¶ 65).  "To induce [plaintiff] to make shipments for the customer's orders, [defendant] Doki (on behalf of himself and [defendant] Lionshead) promised and represented to [plaintiff] that he would forward payments received from the customer to [plaintiff] each day as they were received."  (Id. ¶ 66).  "In reliance on the promises and representations of [defendants] Doki and Lionshead, [plaintiff] shipped $142,000.00 in orders." (Id. ¶ 67).  "Rather than [MOC] forwarding payments as they were received from the customer, [plaintiff] received only a few payments."  (Id. ¶ 68).  "Of the $142,000.00 in orders shipped, $87,378.00 remains unpaid."  (Id. ¶ 69).  "[Defendant] Doki (on behalf of himself and [defendant] Lionshead) . . . made these false representations to induce [plaintiff] to ship

products." (Id. ¶ 70). "Upon information and belief, [defendants] Doki and Lionshead had no intention of forwarding payments from the customer as they were received at the time they made such representation to [plaintiff]." (Id. ¶ 71). "Upon information and belief, [defendants] Doki and Lionshead made other intentional, false representations to [plaintiff] in order to induce [plaintiff] to ship products, despite [MOC's] delinquent account with [plaintiff]." (Id. ¶ 72).

"After the consummation of the LBO Transaction," the Controlling Group defendants "proceeded to freely move funds between" MOC and the Affiliated Entities defendants and defendant Lionshead. (Id. ¶¶ 73-74). The Affiliated Entities defendants have states of incorporation and principal offices other than North Carolina or South Carolina. (Id. ¶¶ 6-9). The Affiliated Entities defendants "have no ostensible business relationship with [MOC]." (Id. ¶ 75). The Controlling Group defendants, through defendant Lionshead and the Affiliated Entities defendants, "provided $240,000.00 to [MOC], and directly paid one of [MOC's] vendors in the amount of approximately $395,000.00 (collectively, the ['Cash Contributions'])." (Id. ¶ 76). The Controlling Group defendants have "characterized the Cash Contributions as loans, but in reality the Cash Contributions were equity contributions because the Cash Contributions were not documented as loans, were given at a time when [MOC] was unable to pay its debts as they became due and were otherwise in the nature of equity." (Id. ¶ 77).

"Despite [MOC's] desperate need for cash, the Controlling Group [defendants] caused $790,349.78 to be transferred from [MOC] to [defendant] Lionshead, the other members of the Controlling Group [defendants] and/or the Affiliated Entities [defendants] between the closing of the LBO Transaction and November 29, 2016 (collectively, the 'Withdrawals')." (Id. ¶ 78). "The Cash Contributions were capital contributions, which were improperly withdrawn in violation of the

rights of [MOC's] creditors, including [plaintiff]." (Id. ¶ 79).

"On September 26, 2016, [plaintiff] sent a letter to [MOC] demanding payment of $1,326,403.75 owed to [plaintiff]." (Id. ¶ 80). Negotiations were unsuccessful, and plaintiff demanded a repayment plan or full payment by November 21, 2016. On November 29, 2016, defendant Doki stated that defendants Janumpally and Valleru "planned to withdraw $541,000.00 from [MOC] rather than using [MOC] funds to make payment to [plaintiff]." (Id. ¶ 85). "The Controlling Group [defendants] caused [MOC] to transfer $320,000.00 to [defendant] Lionshead the same day." (Id. ¶ 86).

"In November 2016, [MOC], Paul [] Olsen, David [] Olsen, Betty [] Olsen, Whitman, and Shepard executed Assignments of Claims assigning [to plaintiff] all of their actual and potential claims, causes of action, and rights against [defendants] Janumpally, Valleru, Doki, Lionshead, Federal[], Gibraltar, Shop Tools, Inman[], Attract[], and any and all other entities and persons related to any of the foregoing." (Id. ¶ 26; Compl. Ex. 1). "In December 2016, Paul and David Olsen exercised their rights under a stock pledge agreement related to the LBO Transaction to retake the 70% of [MOC] stock that was acquired by [defendants Janumpally and Valleru]." (Compl. ¶ 87).

As of December 2016, MOC was no longer a dealer for plaintiff. "As of November 21, 2017, [MOC] is indebted to [plaintiff] in the amount of $1,096,047.37, consisting of $1,090,131.78 in past due unpaid invoices and $5,913.59 in unpaid finance charges." (Id. ¶ 25).

## COURT'S DISCUSSION

A.      Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction.

Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts "the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).When a defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The nonmoving party in such case "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id.

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of a claim for lack of personal jurisdiction. "When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014). At this stage, the court "must construe all relevant pleading allegations in the light most favorable to plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989); see Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir.1993)( "[T]he district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor.").

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.     Analysis

1.     Standing

The Controlling Group defendants and Affiliated Entities defendants (hereinafter, the "moving defendants") argue that plaintiff lacks standing to bring claims that are universal to MOCs creditors, comprising Counts I, II, III, VI, and VII of the complaint.[3] In addressing this argument, the court considers first Counts I, II, and III, plaintiff's statutory claims arising under the North Carolina Uniform Voidable Transactions Act ("UVTA"), N.C. Gen. Stat. § 39-23.1, et seq.; and the court considers second Counts VI and VII, plaintiff's declaratory judgment and unlawful distribution claims.

---

[3] In some instances in their motion and memorandum in support thereof, the moving defendants also list Counts IV and V as subject to dismissal on the same basis. However, in their discussion of these claims, the moving defendants expressly "do not move to dismiss Count V for lack of standing insofar as Plaintiff brings that count on behalf of Miller's." (Defs' Mem. (DE 67) at 8 n.5). They "also do not move to dismiss Plaintiff's fraud claim (Count IV)" for lack of standing. (Id.). In their reply in support of their motion, the moving defendants do not raise any argument in favor of dismissal of Counts IV and V for lack of standing. Accordingly, the court at this juncture does not address lack of standing with respect to claims IV and V.

a. UVTA Claims

The UVTA provides a creditor with a cause of action and remedies where a transfer is "voidable as to [a] present creditor" and "voidable as to present or future creditor." N.C. Gen. Stat. §§ 39-23.4 and 39-23.5. In particular:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) With intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> > a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> >
> > b. Intended to incur, or believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

N.C. Gen. Stat. Ann. § 39-23.4(a). In addition:

> A transfer made by a debtor is voidable as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

N.C. Gen. Stat. § 39-23.5(b). The statute authorizes "[a] creditor" to make "a claim for relief under" these sections upon proof of the "elements of the claim for relief by a preponderance of the evidence." N.C. Gen. Stat. §§ 39-23.4(c) and 39-23.5(c). The UVTA also provides for remedies of a creditor in an action brought under the statute, including "[a]voidance of the transfer . . . to the extent necessary to satisfy the creditor's claim." N.C. Gen. Stat. § 39-23.7(a).

Although moving defendants label their argument in terms of "subject matter jurisdiction" and "standing," they do not assert a valid basis for challenging the court's Article III standing over

plaintiff's claims under these statutory provisions. To possess Article III standing to sue, "a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). Article III standing arises in this case because defendants are alleged to have caused unlawful transfers of funds that prevented MOC from paying a debt to plaintiff. In this respect, plaintiff has shown a concrete injury, fairly traceable to challenged conduct of defendants, that is likely to be redressed by a favorable decision. The fact that others may be able to assert the same claim, in itself, does not deprive plaintiff of Article III standing. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 562 (1992).

Moving defendants suggest instead that plaintiff is not the proper type of plaintiff to bring a claim under the UVTA. In this respect, moving defendants appear to invite consideration of "prudential or statutory standing requirements." Bank of Am. Corp. v. City of Miami, Fla., 137 S. Ct. 1296, 1302 (2017) (internal quotations omitted). In accordance with such requirements, "a statute ordinarily provides a cause of action only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." Id.

Here, plaintiff's interests as a creditor fall within the zone of interests protected by the UVTA, given that the UVTA expressly authorizes "[a] creditor," such as plaintiff, to make "a claim for relief" thereunder, with statutory remedies. N.C. Gen. Stat. §§ 39-23.4(c), 39-23.5(c), 39-23.7(a). Such "remedy of avoiding the fraudulent transfer is consistent with" the predecessor North Carolina Uniform Fraudulent Transfers Act of 1997 ("North Carolina UFTA"), which the UVTA amended upon its enactment in 2015, as well as "prior North Carolina fraudulent conveyance law, which was derived from the Statute of 13 Elizabeth." N.C. Gen. Stat. Ann. § 39-23.7 ("North

Carolina Comment").

Although the Fourth Circuit and the North Carolina Supreme Court have not addressed specifically a creditor's standing to bring claims under the UVTA, it has recognized standing of a creditor under an analogous uniform statute. See, e.g., F. S. Bowen Elec. Co. v. U.S. Fid. & Guar. Co., 256 F.2d 46, 50 (4th Cir. 1958) (finding "standing of a creditor to maintain this action" under Maryland UFTA). Moreover, courts within this circuit and in North Carolina, including this court, have applied the UVTA, or analogous uniform statutes, to address claims brought by creditors to avoid a transfer. See, e.g., Citibank USA, Nat'l Ass'n v. Ragsdale, No. 4:06-CV-71-FL, 2007 WL 9718327, at *2 (E.D.N.C. Dec. 18, 2007) (considering merits of fraudulent transfer claim under North Carolina UFTA brought by creditor); Landress v. Tier One Solar LLC, 243 F. Supp. 3d 633, 648 (M.D.N.C. 2017) (holding that creditor stated a fraudulent transfer claim under North Carolina UFTA); Fischer Inv. Capital, Inc. v. Catawba Dev. Corp., 200 N.C. App. 644, 658 (2009) (same); Gulf Coast Bank & Tr. Co. v. Mingo Tribal Pres. Tr., No. 5:13-CV-113-RLV-DCK, 2016 WL 4499376, at *5 (W.D.N.C. Aug. 25, 2016) (holding that plaintiff, "as assignee to [a] Loan, has standing to bring the fraudulent transfer claim" under the North Carolina UVTA).

Moving defendants cite a federal district court case for the proposition that "[i]t is well-settled . . . that when all creditors of an insolvent or bankrupt corporation share an injury based on a common act, only a receiver or trustee has standing to assert the creditors' collective claim against directors on behalf of the corporation." Angell v. Kelly, 336 F. Supp. 2d 540, 544-45 (M.D.N.C. 2004). Dismissal of the fraudulent conveyance claims in Angell, however, was premised upon the finding that the plaintiff's "claims are property of the bankruptcy estate," id. at 545, whereas in this case there has been no allegation or assertion of any bankruptcy or involvement of

a receiver.  There is no question that "[i]f a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim." Nat'l Am. Ins. Co. v. Ruppert Landscaping Co., 187 F.3d 439, 441 (4th Cir. 1999).  But there is no such circumstance presented here.

Defendants also cite a Fourth Circuit case for the proposition that "[w]here the alleged fraud or negligent mismanagement has resulted in loss to the corporation and its creditors generally, the right of action belongs to the corporation and it may be maintained only in the name of the corporation or its receiver if it is insolvent." Ford Motor Credit Co. v. Minges, 473 F.2d 918, 921 (4th Cir. 1973).  Likewise defendants cite a North Carolina Supreme Court case for the proposition that "where the alleged breach or injuries are based on duties owed to the corporation and not to any particular creditor or stockholder, the creditor or stockholder cannot maintain the action without a demand on the corporation, or its receiver if insolvent." Underwood v. Stafford, 270 N.C. 700, 703 (1967).  Both cases, however, preceded enactment of the North Carolina UFTA and UVTA, and they do not address a creditor's standing to proceed with claims expressly provided by such statute. Moreover, Ford Motor Credit involved a corporation that "was placed in receivership," and such "receiver had previously brought an action against the directors in state court," 473 F.2d at 920 & 921 n.2, a circumstance again not presented by the instant case.

In sum, moving defendants' argument that plaintiff lacks standing to assert Counts I, II, and III of the complaint is without merit.  Therefore, moving defendants' motion is denied in this part.

   b. Declaratory Judgment

Plaintiff seeks a declaratory judgment that all "Cash Contributions made by the Controlling Group and the Affiliated Entities from April 2016 through November 2016 were capital contributions," and not "loans or indebtedness to the Controlling Group or the Affiliated Entities."

(Compl. ¶ 137). Plaintiff has not met its burden of establishing standing to bring such a claim. First, in response to moving defendants' standing argument, plaintiff has not provided any basis upon which it, as a creditor, as opposed to MOC, should be entitled to a judicial declaration as to the characterization of the Cash Contributions as capital contributions opposed to loans or indebtedness. See Underwood, 270 N.C. at 703; Ford Motor Credit Co. v. Minges, 473 F.2d at 921. If plaintiff seeks to bring this claim as assignee of MOC it must so specify.

Second, plaintiff has not demonstrated that litigation of this issue is "unavoidable" if a declaratory judgment is not rendered, a requirement for relief under North Carolina law. Gaston Bd. of Realtors, Inc. v. Harrison, 311 N.C. 230, 234 (1984); Sharpe v. Park Newspapers of Lumberton, Inc., 317 N.C. 579, 590, 347 S.E.2d 25, 32 (1986) (dismissing declaratory judgment claim where there was "no evidence of a practical certainty" that litigation would commence absent declaratory judgment on the issue). While plaintiff suggests that the issue raised by the declaratory judgment claim will be pertinent in a bankruptcy proceeding, plaintiff does not allege or assert that a bankruptcy proceeding is a practical certainty under the circumstances.

Accordingly, moving defendants' motion to dismiss is granted in this part, and plaintiff's claim for declaratory judgment (Count VI) is dismissed without prejudice for lack of subject matter jurisdiction.

c.      Unlawful Distribution

Plaintiff claims that the Controlling Group defendants made an unlawful distribution of corporate funds in violation of N.C. Gen. Stat. § 55-6-40(c). Plaintiff has not established that it has standing to bring such a claim as a creditor of MOC.

Pursuant to N.C. Gen. Stat. 55-6-40, "[a] board of directors may authorize and the

corporation may make distributions to its shareholders subject to restriction by the articles of incorporation and the limitation in [N.C. Gen. Stat. § 55-6-40(c)]." The referenced subsection (c) limitation to distributions states as follows:

(c) No distribution may be made if, after giving it effect:

(1) The corporation would not be able to pay its debts as they become due in the usual course of business; or

(2) The corporation's total assets would be less than the sum of its total liabilities plus (unless the articles of incorporation permit otherwise) the amount that would be needed, if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution.

N.C. Gen. Stat. § 55-6-40(c). "A director who votes for or assents to a distribution made in violation of [N.C. Gen. Stat. §] 55-6-40 or the articles of incorporation is personally liable to the corporation for the amount of the distribution that exceeds what could have been distributed without violating [N.C. Gen. Stat. §] 55-6-40 or the articles of incorporation if it is established that he did not perform his duties in compliance with [N.C. Gen. Stat. §] 55-8-30." N.C. Gen. Stat. § 55-8-33(a) (emphasis added).

Unlike the UVTA, neither § 55-6-40 nor § 55-8-33 provides a cause of action for a creditor to bring a claim against a director for unlawful distribution of corporate funds. Instead, it provides for liability "to the corporation for the amount of the distribution." N.C. Gen. Stat. § 55-8-33(a). Accordingly, plaintiff does not provide any basis to overcome the general rule that "where the alleged breach or injuries are based on duties owed to the corporation and not to any particular creditor or stockholder, the creditor or stockholder cannot maintain the action without a demand on the corporation, or its receiver if insolvent." Underwood, 270 N.C. at 703. "Even then the corporation must be made a party defendant; and any recovery must be held for the benefit of the

corporation." Id. In sum, plaintiff lacks standing to bring Count VII on its own behalf. If plaintiff seeks to bring this claim as assignee of MOC it must so specify.

Accordingly, moving defendants' motion to dismiss is granted in this part, and plaintiff's claim for unlawful distribution (Count VII) is dismissed without prejudice for lack of subject matter jurisdiction. If plaintiff seeks to bring this claim as assignee of MOC it must so specify.

2.  Mootness

Moving defendants contended in their original brief in support of motion to dismiss that certain remaining claims brought by plaintiff are moot because of the resolution of the Michigan Litigation, particularly plaintiff's UVTA claims (Counts I, II, and III) and breach of fiduciary claim (Count V). However, upon reply, they note that "Plaintiff attached a copy of its settlement agreement with [MOC] to its response," and "Moving Defendants concede that the settlement agreement resolves certain mootness concerns." (Reply (DE 72) at 3). Indeed, under the settlement agreement, MOC's indebtedness remains due and owing, with plaintiff reserving the right to pursue collection against MOC, and the Michigan Litigation was dismissed without prejudice. (See Settlement Agreement (DE 71-1) at 1-2). Accordingly, moving defendants have not provided any basis at this juncture for considering issues of mootness as to these claims.

In addition, moving defendants contended that Count IX, based upon oppression of minority shareholders, was mooted by the buyback of shares by David and Paul Olsen. Under North Carolina law, dissolution or court-ordered buyout of shares is an appropriate remedy for oppression of minority shareholders. See N.C. Gen. Stat. § 55-14-30(2).

However, plaintiff does not seek a remedy of dissolution or buyback of shares through Count IX. Rather plaintiff seeks damages for breach of "fiduciary duty" on the basis of "willfully unfair

and oppressive conduct, including: by draining funds from [MOC], by paying exorbitant management fees to Lionshead, transferring funds from [MOC] to Lionshead and the Affiliated Entities, by failing to pay [MOC's] vendors, including [plaintiff], and by excluding Paul Olsen, the Chief Operations Officer of [MOC], from management decisions." (Compl. ¶¶ 164-165). Plaintiff contends this conduct "diminished the value of David and Paul Olsen's shares in [MOC] and exposed them to liability on personal guarantees." (Id. at 167). And plaintiff seeks damages as assignee of David and Paul Olsen's claims.

Accordingly, share buyback by David and Paul Olsen did not moot claim for oppression of minority shareholders (Count IX). Moving Defendants contend in the alternative that, if not moot, then the claim is "redundant" of the breach of fiduciary duty claim (Count V). The fact that plaintiff states its oppression of minority shareholders claim separate from its breach of fiduciary duty claim, however, is not a jurisdictional issue.

In sum, moving defendants have not shown that any of plaintiff's remaining claims are moot, and their motion to dismiss is denied in this part.

3.    Personal Jurisdiction

Moving defendants seek dismissal of all claims against them, except for Count V against defendants Janumpally and Valleru, for lack of personal jurisdiction.

"A lawful assertion of personal jurisdiction over a defendant requires satisfying the standards of the forum state's long-arm statute and respecting the safeguards enshrined in the Fourteenth Amendment's Due Process Clause." Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012). Where, as here, "North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due

Process Clause, . . . the dual jurisdictional requirements collapse into a single inquiry" into whether personal jurisdiction comports with due process. Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001).

The due process inquiry "can be undertaken through two different approaches—by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction" based on "continuous and systematic" activities. ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711 (4th Cir. 2002). Here, plaintiff asserts specific jurisdiction. (Pl's Resp. (DE 71) at 16).

"To decide whether specific jurisdiction exists, we examine (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004) (quotations omitted); see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 283-84 (2014) (quotations omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." Id. at 284. The court considers first the Controlling Group defendants and then the Affiliated Entities defendants under this test.

a.     Controlling Group

The court has personal jurisdiction over the Controlling Group defendants where they purposefully availed itself of the privilege of conducting activities in North Carolina, the remaining

claims arise out of those activities, and exercise of jurisdiction is constitutionally reasonable.

First, defendants Janumpally and Valleru purposefully availed themselves of the privilege of conducting activities in North Carolina by entering into a complex and substantial LBO transaction to take over control of the affairs of a North Carolina corporation, MOC, allegedly for their own benefit. (See, e.g., Compl. ¶¶ 28-29, 41, 45, 48-49, 73-74, 76, 78, 85-86, 145). The LBO transaction set into place continuing obligations towards and in relation to MOC. (See, e.g., id. ¶¶ 39, 48-49, 73). Viewing allegations in the complaint in the light most favorable to plaintiff, defendants Janumpally and Valleru continued to purposefully avail themselves of this privilege by controlling MOC at all times pertinent to the complaint, themselves and through their agents, defendants Doki and Lionshead. (See, e.g., id.). Plaintiff's claims against them arise out of those North Carolina activities because defendants Janumpally and Valleru allegedly made transfers from MOC in their interest and breached fiduciary duties, as alleged in the complaint, through their ownership and control of MOC. (See, e.g., id. ¶¶ 50-51, 59, 74, 78, 85-86, 90 (Count I), 100 (Count II), 110 (Count III), 131-32 (Count V), 165, 168 (Count IX)).

Second, defendants Doki and Lionshead also purposefully availed themselves of the privilege of conducting activities in North Carolina by contracting with defendants Janumpally and Valleru, the owners and officers of a North Carolina corporation, to manage all operations of such corporation. (See, e.g., Compl. ¶¶ 39, 46-51, 59, 66, 70, 73-74, 76, 78, 85-86, 145). Their management agreement set into place continuing obligations towards and in relation to MOC. (See, e.g., id. ¶¶ 39, 48-51, 66, 73). Again viewing allegations in the complaint in the light most favorable to plaintiff, defendants Doki and Lionshead continued to purposefully avail themselves of this privilege by allegedly commandeering the North Carolina corporation, MOC, for their own benefit

and for the benefit of their clients. (See, e.g., id. ¶¶ 39, 46-51, 59, 66, 70, 73-74, 76, 78, 85-86, 145). Plaintiff's claims against them arise out of those North Carolina activities because defendants Doki and Lionshead made transfers from MOC in their clients' interest, caused breaches of fiduciary duties, and made fraudulent misrepresentation as alleged in the complaint, through their use and control of MOC. (See, e.g., id. ¶¶ 48, 50-51, 59, 66, 74, 78, 85-86, 90 (Count I), 100 (Count II), 110 (Count III), 117-120 (Count IV), 131-32 (Count V), 165, 168 (Count IX)).

Finally, it is constitutionally reasonable to exercise personal jurisdiction over the Controlling Group defendants where there is no identified burden on requiring them to litigate in North Carolina, and where North Carolina has a strong interest in adjudicating a dispute involving the ownership, management, and control of a North Carolina corporation. The Controlling Group defendants have demonstrated facility in allegedly contracting with and controlling a North Carolina corporation, from their residences in adjoining state, Virginia, and there is no evidence that practical considerations make exercise of personal jurisdiction in North Carolina unreasonable. In sum, jurisdictional rules are not exploited here "in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." Nolan, 259 F.3d at 217.

Moving defendants argue that personal jurisdiction over the Controlling Group defendants is not warranted, where the sole basis for asserting such is their "status" as officers, directors, or managing agents of MOC. (Mem. (DE 67) at 16-17). In so arguing, however, they ignore that the complaint does not just assert claims against them based upon their "status," but rather upon their continuing actions and inactions following the LBO that directly impacted MOC and its operations. Two North Carolina state law cases cited by moving defendants are inapposite because the claims

alleged in those cases did not arise out of the defendants' actions in allegedly taking over and managing financial affairs of a North Carolina corporation. <u>See, e.g.,</u> <u>Robbins v. Ingham</u>, 179 N.C. App. 764, 765 & 771 (2006) (finding no personal jurisdiction over a director of a corporation chartered in the Isle of Guernsey, for failed investments sent to such corporation); <u>Saft Am., Inc. v. Plainview Batteries, Inc.</u>, 189 N.C. App. 579, 581 (2008), <u>rev'd in part for reasons stated in dissenting opinion of court of appeals</u>, 363 N.C. 5 (2009) (finding personal jurisdiction over officer and director of New York corporation that conducted substantial transactions with North Carolina corporation).

Much more pertinent to the personal jurisdiction analysis of claims against the Controlling Group defendants is the North Carolina long-arm statute expressly providing for jurisdiction over directors and officers of North Carolina corporations, and case law applying such statute. In particular, the long-arm statute provides for personal jurisdiction in the following circumstance:

> Director or Officer of a Domestic Corporation.--In any action against a defendant who is or was an officer or director of a domestic corporation where the action arises out of the defendant's conduct as such officer or director or out of the activities of such corporation while the defendant held office as a director or officer.

N.C. Gen. Stat. Ann. § 1-75.4(8). While this North Carolina long-arm statute is not determinative of the constitutional due process inquiry, <u>see</u> <u>Nolan</u>, 259 F.3d at 215, it is a significant factor in finding that personal jurisdiction over the Controlling Group defendants comports with due process requirements. Indeed the Supreme Court of the United States expressly has recognized the importance of this North Carolina statute in the constitutional due process inquiry. <u>Shaffer v. Heitner</u>, 433 U.S. 186, 216 & n. 47 (1977) (in discussing sufficient notice aspects of due process inquiry, contrasting Delaware with three states, including North Carolina, that "enacted a statute that treats acceptance of a directorship as consent to jurisdiction in the State"); <u>see, e.g.,</u> <u>Pasquinelli v.</u>

Wilson, 89 N.C. App. 341, 344 (1988) ("The State's policy in this regard was announced to the public, and before appellants voluntarily became directors of the North Carolina corporation involved they knew or should have known that by accepting those positions and the protection given them by our laws that they could be required to account for their stewardship in the courts of this state.").

Moving defendants also suggest that the court should draw a distinction between plaintiff's breach of fiduciary duty claims and plaintiff's other claims for purposes of personal jurisdiction. In so arguing, moving defendants concede that the court has personal jurisdiction over plaintiff's assigned breach of fiduciary duty claim against defendants Janumpally and Valleru, on the basis of their "status vis-a-vis [MOC]." (Mem. (DE 67) at 17 n. 9). As pleaded, however, all of the remaining claims arise out of the Controlling Group defendants' status vis-a-vis MOC, either through their management or mismanagement of MOC during the time period in which they held ownership, officer, and management positions. At this stage in the case, the moving defendants have not articulated a workable distinction between the fiduciary duty claim and the other claims for purposes of personal jurisdiction.

In sum, based upon the allegations in the complaint, viewed in the light most favorable to plaintiff, the court may exercise personal jurisdiction over the Controlling Group defendants for purposes of the remaining claims. In this part moving defendants' motion to dismiss is denied.

      b.     Affiliated Entities

By contrast, the court does not have personal jurisdiction over the Affiliated Entities defendants, because plaintiff has not alleged that they purposefully availed themselves of the privilege of conducting activities in North Carolina.

Plaintiff contends that the court has personal jurisdiction over the Affiliated Entities defendants based upon their participation in fraudulent transfers to and from MOC. For example, plaintiff alleges: "After the consummation of the LBO Transaction," the Controlling Group defendants "proceeded to freely move funds between" MOC and the Affiliated Entities defendants and defendant Lionshead. (Id. ¶¶ 73-74). The Controlling Group defendants, through defendant Lionshead and the Affiliated Entities defendants, "provided $240,000.00 to [MOC], and directly paid one of [MOC's] vendors in the amount of approximately $395,000.00 (collectively, the ['Cash Contributions'])." (Id. ¶ 76). In addition, "Controlling Group [defendants] caused $790,349.78 to be transferred from [MOC] to [defendant] Lionshead, the other members of the Controlling Group [defendants] and/or the Affiliated Entities [defendants] between the closing of the LBO Transaction and November 29, 2016 (collectively, the 'Withdrawals')." (Id. ¶ 78).

These allegations do not permit an inference that the Affiliated Entities defendants purposefully availed themselves of activities in North Carolina nor any substantial connection with North Carolina. Mitrano, 377 F.3d at 407; Walden, 571 U.S. at 284. The Affiliated Entities defendants have states of incorporation and principal offices other than North Carolina or South Carolina. (Id. ¶¶ 6-9). They "have no ostensible business relationship with [MOC]." (Id. ¶ 75). Against this backdrop, plaintiff does not allege any facts that tie the specific financial transactions that form the basis for plaintiff's fraudulent transfer claims against the Affiliated Entities defendants (Counts I and III) to North Carolina. While plaintiff does allege that they are "Affiliated" with MOC, plaintiff does not allege that they had control over MOC or management responsibility with MOC, in contrast to claims against the Controlling Group. (See, e.g., Compl. ¶ 76). This lack of control and status vis-a-vis MOC is a critical distinguishing factor between the Affiliated Entities

and the Controlling Group defendants.

Nor has plaintiff alleged that any individual transactions between the Affiliated Entities and MOC or the Controlling Group has a connection with North Carolina. Plaintiff cites <u>Mascaro v. Mountaineer Land Grp., LLC</u>, No. 06 CVS 3016, 2006 WL 3334535, at *6 (N.C. Super. Nov. 14, 2006), for the proposition that receipt of a substantial fraudulent transfer from a North Carolina company constitutes a substantial connection to North Carolina. <u>Mascaro</u>, however, is instructively distinguishable from the instant case, in addition to lacking precedential force. There, the transferor company was a North Carolina company organized for the purpose of "acquir[ing] and develop[ing] real property in Mecklenburg and Cabarrus Counties" <u>Id.</u> *1. The defendant transferee challenging jurisdiction attended a dinner in North Carolina with "People involved with [transferor company] and its land development project . . . in attendance." <u>Id.</u> *2. The defendant transferee held a deed of trust encumbering a tract of land in North Carolina. <u>Id.</u> *6. No such connections or analogous connections between the transactions and North Carolina are alleged here.

Plaintiff argues, in the alternative, that it should be entitled to jurisdictional discovery with respect to the Affiliated Entities. Where, however, plaintiff has not alleged any facts to establish a prima facie case of personal jurisdiction, dismissal for lack of subject matter jurisdiction is warranted. <u>See</u> <u>Universal Leather</u>, 773 F.3d at 558 ("[P]laintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction."). Moreover, while plaintiff expresses a desire "to more fully understand and determine the circumstances surrounding the transfers from [MOC] to the Affiliated Entities," (Resp. (DE 71) at 20), plaintiff has not suggested what facts could be obtained through discovery that would change the instant jurisdictional analysis. <u>See</u> <u>Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.</u>, 334 F.3d 390, 403 (4th Cir. 2003). Therefore,

those parts of plaintiff's claims against the Affiliated Entities defendants (Counts I, III, and VI) are dismissed without prejudice for lack of personal jurisdiction, and the court denies plaintiff's alternative request for jurisdictional discovery.

4.  Failure to State a Claim

Moving defendants seek dismissal of the remaining claims, some in part and some in whole, for failure to state a claim. The court addresses each in turn below.

a.  UVTA (Counts I, II, III)

Moving defendants argue that plaintiff fails to state a claim against defendants Janumpally, Valleru, or Doki, under the UVTA because plaintiff fails to allege they were recipients of any voidable transfers of assets. As noted previously, the UVTA provides a cause of action for a creditor in the event of a voidable transfer "made to an insider for an antecedent debt," N.C. Gen. Stat. § 39-23.5(b), and "[a] transfer made" with intent to "hinder, delay, or defraud any creditor" or "without receiving a reasonably equivalent value." Id. § 39-23.4(a). The UVTA defines those against whom a creditor may recover:

> (1) Except as otherwise provided in this section, the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:
>
> a. The first transferee of the asset or the person for whose benefit the transfer was made; or
>
> b. An immediate or mediate transferee of the first transferee, other than:
>
> 1.  A good-faith transferee that took for value; or
> 2.  An immediate or mediate good-faith transferee of a person described in sub-sub-subdivision 1. of this sub-subdivision.

N.C. Gen. Stat. § 39-23.8(b).

In this case, plaintiff has alleged sufficient facts permitting an inference that each of the Controlling Group defendants, including Janumpally, Valleru, and Doki, were either "the person for whose benefit the transfer was made" or an "immediate or mediate transferee of the first transferee." Id. For example, plaintiff alleges that "the Controlling Group [defendants] caused $790,349.78 to be transferred from [MOC] to [defendant] Lionshead, the other members of the Controlling Group [defendants] and/or the Affiliated Entities [defendants] between the closing of the LBO Transaction and November 29, 2016." (Compl. ¶ 78). In addition, the complaint describes payments made to "vendors" in the amount of approximately $395,000.00; management fees paid to defendant Lionshead in the amount of $20,000.00 per month; and a transfer of $320,000.00 to defendant Lionshead, related to planned withdrawals by defendants Janumpally and Valleru, on November 29, 2016. (Compl. ¶¶ 50, 76, 85, 86).

Moving defendants argue that plaintiff cannot rely upon "bare allegations relating to the conduct of 'all defendants' to hold [one defendant] liable," quoting this court's opinion in Boykin Anchor Co. v. AT&T Corp., No. 5:10-CV-591-FL, 2011 WL 1456388, at *4 (E.D.N.C. Apr. 14, 2011). The instant complaint, however, does not rely upon bare allegations relating to conduct of all defendants to hold one defendant liable. Plaintiff has alleged individual conduct by defendants Janumpally, Valeru, Doki, and Lionshead, to raise a reasonable inference that each could be a beneficiary of voidable transfers or a mediate transferee. (See, e.g., Compl. ¶¶ 42-51). There were no similar factual allegations in Boykin Anchor supporting an inference that multiple separate defendants were acting in furtherance of a common management enterprise, as here.

Moving defendants also argue that plaintiff refers to a different transaction amount in asserting Count I ($545,770.00) and Count II ($320,000.00) than is alleged in paragraph 78 of the

complaint ($790,349.78). Plaintiff asserts liability on "not less than" the amounts specified in each count, however, and plaintiff incorporates all preceding paragraphs as if fully restated in each count. (Id. ¶¶ 89-90, 99-100). While much more precise proof will be required for trial and judgment, the present allegations are sufficient to state a claim under the UVTA.

Finally, moving defendants suggest that plaintiff improperly labeled its UVTA claims as "fraud" claims, which would require heightened pleading standard. Regardless of their label, however, these claims are statutory claims and not common law fraud claims. In any event, plaintiff's claim under § 39-23.1(a)(1), which may involve a transfer with intent to "defraud any creditor," has been pleaded with specificity required by Federal Rule of Civil Procedure 9(b) in that it alleges a $320,000 transfer made on November 29, 2016, in exchange for no value. (Compl. ¶¶ 100, 104).

In sum, plaintiff sufficiently alleges claims under the UVTA against the Controlling Group defendants. Therefore, moving defendants' motion is denied in this part.

### b. Fraud (Count IV)

Moving defendants argue that plaintiff has not pleaded its fraud claim against defendants Doki and Lionshead with particularity. "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). Plaintiff has met this Rule 9(b) heightened pleading standard in that "[i]n June 2016, Doki and Lionshead represented to Haworth they would forward payments to Haworth at the time the payments were received from the customer," in reference to a "major customer of [MOC that] had various outstanding orders with

plaintiff." (Compl. ¶ 117).

Moving defendants also contend that plaintiff fails to allege the element of present intent not to perform. A plaintiff must "allege facts from which a court and jury may reasonably infer the defendant's intent not to [perform] existed at the time he made the commitment to do so." Hoyle v. Bagby, 253 N.C. 778, 781 (1961). "The promise to pay must have been made (1) with the present intent not to carry it out and (2) with the purpose to induce the plaintiff [to provide goods] for which the defendant did not intend to pay." Id. "[M]ere generalities and conclusory allegations of fraud will not suffice to sustain a fraud claim." Strum v. Exxon Co., USA, 15 F.3d 327, 331 (4th Cir.1994) (quotations omitted. Thus, where a plaintiff does "nothing more than assert that [a promissor] never intended to honor its obligations under [an] agreement," dismissal as a matter of law is appropriate. Id.

Here, plaintiff alleges that defendants Doki and Lionshead promised to forward payments received from the customer "[t]o induce [plaintiff] to make shipments for the customer's orders." (Compl. ¶ 66). In addition, plaintiff alleges that "Doki and Lionshead had no intention of forwarding payments from the customer as they were received at the time they made such representation to [plaintiff]." (Id. ¶ 71). These allegations are sufficient to meet the pleading standard for this element when considered in conjunction with other allegations in the complaint bearing upon intent, such as: 1) the Controlling Group's difficulties in paying MOC vendors and payroll beginning in March 2016; 2) allegedly excessive or improper transfers made to and between defendants, who had just recently taken over control of MOC through the LBO transaction; 3) exclusion of prior and longer-term shareholders and officers from management and operations decisions; 4) alleged mismanagement and disregard of management responsibilities by defendants

Janumpally and Valleru; and 5) the LBO did not "strengthen [MOC's] financial situation" as already promised. (E.g., Compl. ¶¶ 27, 39-40, 46-51, 53, 55-56 73-78, 85-87, 132, 165). While moving defendants contend the claim is based upon mere failure to perform a contract, there is more alleged: The existing contract already was past due, (id. ¶¶ 55, 53-54), and the alleged misrepresentation induced plaintiff to continue shipping despite lack of intention by defendants Doki and Lionshead to forward payments received from the customer. (Id. ¶¶ 64-72).

Finally, moving defendants argue that plaintiff's allegation of "other intentional, false representations," (id. ¶ 121), fail to satisfy Rule 9. The court agrees that such allegations do not support an independent claim for fraud; but, plaintiff does not so assert. Rather, they are further allegations that support an inference of intent in the fraud claim asserted as a basis for Count IV. (See id.).

In sum, plaintiff states a claim for fraud (Count IV), and moving defendants' motion to dismiss is denied in this part.

      c.     Breach of Fiduciary Duty (Count V)[4]

          i.     Creditor's claim

Moving defendants seek dismissal of plaintiff's breach of fiduciary duty claim (Count V) to the extent it asserts breach of fiduciary duty on its own behalf, as a creditor of MOC, as opposed to assignee of MOC's claims. "Under North Carolina law, officers and directors of a corporation owe a fiduciary duty to the corporation which does not create an individual cause of action." Rivers v. Wachovia Corp., 665 F.3d 610, 617 (4th Cir. 2011) (emphasis added). In particular, an officer or a director with discretionary authority, shall discharge such duties:

---

[4] As discussed herein, the court addresses also certain aspects of plaintiff's claim for oppression of minority shareholders (Count IX) in this section.

(1) In good faith;
(2) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and
(3) In a manner he reasonably believes to be in the best interests of the corporation.

See N.C. Gen. Stat. §§ 55-8-30(a), 55-8-42(a).[5]  According to official commentary to the statute "[t]he drafters . . . express . . . their opinion that in general" directors "do not have any such duty to creditors."  Id. § 55-8-30 (North Carolina Commentary).

As a limited exception to this general rule, the North Carolina Supreme Court has recognized in past cases a right of action by a creditor against officers and directors of a corporation for breach of fiduciary duty "where the corporation being insolvent or nearly so," conveyed "its entire property with a view of going out of business amount[ing] practically to a dissolution." Bassett v. Pamlico Cooperage Co., 188 N.C. 511, 125 S.E. 14, 14 (1924); see Whitley v. Carolina Clinic, Inc., 118 N.C. App. 523, 527, (1995) ("Bassett and other decisions of our Supreme Court . . .establish that more than 'balance sheet insolvency' is required in order to impose on directors a fiduciary duty to creditors."); cf. Fed. Deposit Ins. Corp. v. Sea Pines Co., 692 F.2d 973, 976–77 (4th Cir. 1982) ("The law by the great weight of authority seems to be settled that when a corporation becomes insolvent, or in a failing condition, the officers and directors no longer represent the stockholders, but by the fact of insolvency, become trustees for the creditors, and that they cannot by transfer of its property or payment of cash, prefer themselves or other creditors.").

While plaintiff here has alleged facts permitting an inference that MOC was not able or willing to pay all of its debts as they became due during certain times in 2016, (e.g. Compl. ¶¶ 51, 55-63, 77), plaintiff has not alleged facts permitting an inference that MOC had conveyed "its entire

---

[5]  Amendment enacted in June 2018, effective October 1, 2018, makes stylistic alterations in a manner not material to the instant analysis. See 2018 North Carolina Laws S.L. 2018-45 (S.B. 622).

property with a view of going out of business amount[ing] practically to a dissolution." <u>Bassett</u>, 125 S.E. at 14.   Absent alleged facts suggesting MOC was going out of business or practically dissolving, North Carolina law does not recognize a cause of action for breach of fiduciary duty brought by a creditor against officers and directors of a corporation. <u>See</u> <u>id.</u>; <u>Rivers</u>, 645 F.3d at 617. Although plaintiff argues that a combination of factors shows that the Controlling Group defendants were "not continuing to operate [MOC] in good faith despite its insolvency," (Resp. (DE 71) at 28), that is not the standard required to enable a creditor to assert a breach of fiduciary duty claim.

Accordingly, moving defendants' motion to dismiss is granted in this part.  Plaintiff's claim for breach of fiduciary duty (Count V), brought on its own behalf and not as assignee of MOC claims, is dismissed without prejudice.

ii.     Assigned Claim

Moving defendants argue that plaintiff's breach of fiduciary duty claim must be dismissed because plaintiff fails to "overcome the presumption of the business judgment rule."  (Mot. to Dismiss (DE 66) at 4).  However, where moving defendants concede that "the business judgment rule is an affirmative defense to a breach of fiduciary duty claim," (Mem. (DE 67) at 28), the court at this juncture declines to dismiss plaintiff's remaining breach of fiduciary duty claim on this basis. The moving defendants do not cite binding Fourth Circuit authority for the proposition that a plaintiff must "plead around the business judgment rule," (<u>id.</u> (quoting <u>In re Tower Air, Inc.</u>, 416 F.3d 229, 238 (3d Cir. 2005)), and the court declines here so to do. <u>See</u> <u>F.D.I.C. ex rel. Co-op. Bank v. Rippy</u>, 799 F.3d 301, 312 (4th Cir. 2015) ("The business judgment rule operates primarily as a <u>rule of evidence</u> or judicial review and creates, first, an initial <u>evidentiary presumption</u>.") (emphasis added, quotations omitted).

In sum, as it pertains to the remaining assigned claim of breach of fiduciary duty (Count V), the court denies moving defendants' motion to dismiss on this basis. The court also construes plaintiff's ninth cause of action for "oppression of minority shareholders" (Count IX) as a breach of fiduciary claim subject to similar treatment. (See Pl's Resp. (DE 71) at 32 (asserting that plaintiff states a claim "for breach of fiduciary duty" for suppression of minority shareholders, including against defendants Doki and Lionshead). Accordingly, the moving defendants' motion to dismiss plaintiff's ninth cause of action is granted in part and denied in part in the same manner as the motion as to plaintiff's fifth cause of action for breach of fiduciary duty.

5.     Necessary Parties

Moving defendants seek dismissal of the complaint for failure to join necessary parties, including MOC, unspecified MOC creditors, and MOC's shareholders. Under Federal Rule of Civil Procedure 19, "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). "If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

Moving defendants have not shown that MOC, MOC's creditors, or MOC's shareholders are necessary parties. First, they have not shown that the court cannot accord complete relief among existing parties, here for plaintiff against defendants, without these additional parties participating in the lawsuit. For instance, none of the claims that remain require the presence of MOC's creditors or MOC's shareholders to award the relief plaintiff seeks. Nor do they require the presence of MOC, where plaintiff is acting as assignee of MOC. See Booker v. Everhart, 294 N.C. 146, 156 (1978) ("Generally under modern statutes or rules of court which authorize an assignee to bring suit in his own name on a claim assigned to him if the assignment is of the entire claim, the assignor is not a necessary party to the suit and need not be joined as a party."). Nor have moving defendants demonstrated that, in light of assignments of claims to plaintiff, absence of such parties will impede their ability to protect their own interests.

Accordingly, moving defendants' motion to dismiss on this basis is denied.

6.      Inman and Attract

Defendants Inman and Attract move to dismiss the sole claim asserted against them, fraudulent transfer under N.C. Gen. Stat. § 39-23.4(a)(2) (Count VIII), for failure to state a claim upon which relief can be granted. Plaintiff asserts that defendants Inman and Attract violated § 39-23.4(a)(2) by receiving allegedly fraudulent transfers from MOC without providing to MOC reasonably equivalent value in exchange, and by participating in and aiding fraudulent transfers to the Cashed-Out Sellers and David Olsen, which transfers in the aggregate totaled $1,000,000.00.

Section 39-23.4 provides, in pertinent part:

(a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

.      .      .      .      .

34

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

> a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

> b. Intended to incur, or believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

N.C. Gen. Stat. § 39-23.4(a). The UVTA provides some examples of what is meant by "value" in the phrase "reasonably equivalent value." In particular:

> (a) Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

> (b) For the purposes of G.S. 39-23.4(a)(2) and G.S. 39-23.5, a person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust, or security agreement.

N.C. Gen. Stat. § 39-23.3. The commentary to the statute explains that § 39-23.3(a), defining "value" is "adapted from Bankruptcy Code § 548(d)(2)(A)," which provides similar standards for avoiding a transfer by a debtor where the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation." 11 U.S.C. § 548(a)(1)(B)(i).

Although the Supreme Court of North Carolina has not addressed the standard for determining "reasonably equivalent value" in the context of the UVTA, the Fourth Circuit has addressed the standard in the context of the Bankruptcy Code and the UVTA. See In re Morris Commc'ns NC, Inc., 914 F.2d 458, 467 (4th Cir. 1990) (Bankruptcy Code); Starnes v. C.I.R., 680 F.3d 417, 432-33 (4th Cir. 2012) (UVTA). The court has recognized "that reasonable equivalence [is] to be determined by an analysis of all the circumstances surrounding the suspect transfer." In

re Morris, 914 F.2d at 467 (quotations omitted); see Starnes, 680 F.3d at 432-33.

In this case, with respect to transfer of funds to defendants Inman and Attract, plaintiff has stated a claim that defendants Inman and Attract received funds from MOC without providing MOC reasonably equivalent value in exchange. Plaintiff alleges that defendant Inman "acted as a broker with respect to the LBO Transaction," and that defendant Attract "acted as a business advisor with respect to the LBO Transaction." (Compl. ¶¶ 150-151). Plaintiff alleges that "[o]f the $1,000,000.00 in cash paid for the redemption of Miller's shares," MOC paid $350,000.00 to defendant Inman and $70,000.00 to defendant Attract. (Id. ¶¶ 34-35). It is reasonable to infer from the allegations in the complaint that the services provided by defendants Inman and Attract provided no benefits to MOC, but instead reduced available credit, introduced inadequate management, harmed corporate relationships, and resulted in substantial outflows of funds. (E.g., Compl. ¶¶ 41, 46, 52, 55-56, 59-62, 74, 78). In addition, after the LBO transaction, MOC was unable to pay its debts as they became due and its assets were unreasonably small in relationship to the business. (Id. ¶¶ 29, 52).

Defendants Inman and Attract argue that there are insufficient factual allegations pertaining to their specific services and conduct to give rise to an inference of no reasonably equivalent value. Plaintiff, however, has alleged specific transfers made to Inman and Attract. (Id. ¶¶ 34-35). Where the reasonably equivalent value inquiry is dependent upon an analysis of the totality of the circumstances, and where the court must accept all alleged circumstances surrounding the LBO Transaction as true, permitting an inference of no benefit to MOC, plaintiff has sufficiently alleged no reasonably equivalent value in exchange for such services.

1.          Defendant Attract also asserts, contrary to the allegation in the complaint, that MOC

did not transfer funds to it in connection with the LBO Transaction. Defendant Attract contends that the Stock Redemption and Purchase Agreement, attached to its motion to dismiss, demonstrates that MOC did not transfer $70,000.00 to defendant Attract. Where plaintiff contests the authenticity and completeness of he Stock Redemption and Purchase Agreement, the court declines at this juncture to resolve this factual issue and instead accepts as true the allegation in the complaint the MOC transferred $70,000.00 to defendant Attract. (Compl. ¶ 35).

In sum, plaintiff has stated a claim that defendants Inman and Attract violated § 39-23.4(a)(2) by receiving allegedly fraudulent transfers from MOC without providing to MOC reasonably equivalent value in exchange. In this part, the motion to dismiss by defendants Inman and Attract is denied.

By contrast, plaintiff's claim that defendants Inman and Attract are liable to plaintiff under § 39-23.4(a)(2) by virtue of participating in and aiding fraudulent transfers to the Cashed-Out Sellers and David Olsen fails as a matter of law. The statute does not provide for liability of a third party for aiding and abetting voidable transfers made to others, but rather provides for remedies in the form of avoidance of the transfer or other remedies directed at the transferred asset or transferee. See N.C. Gen. Stat. §§ 39-23.4 and 39-23.7. Plaintiff seeks to distinguish cases limiting aiding and abetting liability on the basis that defendants Inman and Attract may be liable as transferees of funds. But, the court has already addressed that portion of plaintiff's claim involving transfers made directly to defendants Inman and Attract, and that portion of claim does not require a theory of aiding and abetting liability to proceed. For the remaining portion of plaintiff's claim, based upon the balance of aggregate $1,000,000.00 in alleged transfers made to the Cashed-Out Sellers and

David Olsen, defendants Inman and Attract are not alleged transferees, and plaintiff must rely upon an aiding and abetting theory to proceed. Plaintiff has not cited any binding precedent authorizing such a claim under § 39-32.4.

Plaintiff cites <u>In re Am. Ambulette & Ambulance Serv., Inc.</u>, 560 B.R. 256, 267 (Bankr. E.D.N.C. 2016) for the proposition that, if presented with the issue heretofore not presented to it, the North Carolina Supreme Court would recognize a claim for aiding and abetting breach of fiduciary duty. That case, however, is inapposite because it addressed aiding and abetting of a common law claim, not a statutory claim as here specifically directed to voidable transfers and transferees. <u>See</u> § 39-23.4(a)(2).

In sum, plaintiff's claim that defendants Inman and Attract are liable plaintiff under § 39-23.4(a)(2) by virtue of participating in and aiding fraudulent transfers to the Cashed-Out Sellers and David Olsen is dismissed as a matter of law. The motions to dismiss by defendants Inman and Attract thus are granted in this part.

## CONCLUSION

Based on the foregoing, defendants' motions to dismiss (DE 60, 63, 66) are GRANTED IN PART and DENIED IN PART as set forth herein. The following claims and defendants are dismissed in the manner specified below:

1) Plaintiff's claims for declaratory judgment (Count VI) and unlawful distribution (Count VII) are dismissed without prejudice for lack of subject matter jurisdiction.

2) All claims against defendants Global Computer Products, Inc.; Federal Systems LLC; Gibraltar Business Capital, LLC; and Shop Tools, Inc., (Counts I, III, and VI), are dismissed without prejudice for lack of personal jurisdiction.

3)    Plaintiff's claims for breach of fiduciary duty (Count V) and oppression of minority shareholders (Count IX), brought on plaintiff's own behalf and not as assignee of claims, are dismissed without prejudice.

4)    Plaintiff's claim against defendants William Inman Company, LLC, and AttractCapital LLC (Count VIII) is dismissed in that part that asserts a claim based upon participation in and/or aiding and abetting in fraudulent transfers to other parties.

All other claims and defendants remain. Remaining defendants shall file a response to the complaint in accordance with Federal Rule of Civil Procedure 12(a)(4).

SO ORDERED, this the 20th day of August, 2018.


LOUISE W. FLANAGAN
United States District Judge